IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LILVANS HAYWOOD,                          )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )          Case No. 3:25-cv-00718-RJD
                                          )
ERIN NICKOLSON, *et al.*,                 )
                                          )
        Defendants.                       )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:[1]**

This matter comes before the Court on the Motion for Summary Judgment on the Issue of Exhaustion (Doc. 40) filed by Defendants Erin Nickolson (QMHP) and Paige Salger (BHT). For the reasons explained below, the motion is **GRANTED in part and DENIED in part**.

## Background

Plaintiff Lilvans Haywood, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brought this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while at Menard Correctional Center ("Menard"). Haywood alleges that Defendants kept him in unconstitutional conditions and deliberately ignored his requests for medical attention.

Specifically, Haywood alleged that on October 26, 2024, he went on crisis watch because he feared for his life due to threats from other inmates. (Doc. 1, p. 5). He was moved to a cell "flooded with feces on the floor, on the wall, [and] the toilet…and it didn't flush." Haywood

---

[1] This case has been assigned to the undersigned to conduct all proceedings through the parties' consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 35).

requested that Nickolson either move him to a new cell or address the unsanitary conditions. He told her that he had "been going in & out of [his] mind since [being put in his] cell," but he was not moved, nor was the cell cleaned. Haywood told Nickolson, Salger, and other mental health staff members that he was not suicidal or homicidal and that being forced to remain on crisis watch in the uncleaned cell was causing him to suffer. It took 33 days from when Haywood moved into the cell until it was cleaned. (*Id*.)

On November 19, 2024, 10–12 unnamed correctional officers pepper-sprayed and beat Haywood for 30 minutes. (Doc. 1, p. 5). On November 20, 2024, Nickolson asked Haywood how he got a blood clot in his right eye. Haywood informed Nickolson that it was due to being pepper-sprayed and beaten by correctional officers. He added that he needed to talk to Internal Affairs, requested to be taken off crisis watch, and asked to be seen by medical staff for the pain he was experiencing all over his body from the assault. Nickolson ignored Haywood and walked away. (*Id*.)

From late November through mid-December 2024, Haywood continued to tell Nickolson and Salger that he was ready to be released from crisis watch. (Doc. 1, p. 5). Haywood was released from crisis watch on December 11, 2024, and began cutting himself because he still was not receiving the help he needed. On December 17, 2024, Haywood attempted suicide by hanging and was subsequently beaten and pepper-sprayed by unnamed correctional officers. Haywood was placed back on crisis watch but released the following day. After his release, Haywood again started cutting himself and self-harming. Haywood returned to crisis watch after trying to hang himself on December 21, 2024. While on crisis watch, he asked mental health staff to see a therapist and receive medication, but received neither. On January 13, 2025, Nickolson let

Haywood off crisis watch. Even after being let off crisis watch, he was not provided with therapy

or medication. (*Id.*)

Haywood further represented in the Complaint that he exhausted his administrative

remedies through Grievance K4-0125-0416, dated January 25, 2025, for which he received a

response from the ARB on March 21, 2025. (Doc. 1, pp. 4-6).

Following threshold review of the Complaint, Haywood was allowed to proceed on the

following claims:

Count 1:    Eighth Amendment claim against Nickolson for depriving Haywood of the
basic human need of rudimentary sanitation.

Count 2:    Eighth Amendment claim against Nickolson and Salger for deliberate
indifference to Haywood's serious need for mental-health services during
and after spending time in unsanitary conditions.

Count 4:    Eighth Amendment claim against Nickolson for deliberately ignoring
Haywood's requests for medical attention on November 20, 2024, after he
was beaten on November 19, 2024.

(Doc. 11).[2]

On January 21, 2026, Defendants moved for summary judgment, arguing that Plaintiff

failed to exhaust his administrative remedies before initiating this action. (Doc. 40). Their

memorandum in support of the motion includes a Statement of Material Facts with proper citation

to the record in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule

56.1. (Doc. 41, pp. 1-9). Defendants also filed a Rule 56 Notice of Motion advising Haywood of

the consequences of failing to respond to the motion.[3] (Doc. 67). Despite being properly served

---

[2] Defendant Nickolson was originally identified as Ms. Nickerson and Defendant Salger as Ms. S. (Doc.
11). The Court dismissed Count 3 of the Complaint for failure to state a claim and also dismissed any claims
against Defendant Wexford Health Sources Incorporated. (Doc. 11).

[3] The Rule 56 Notice of Motion (Doc. 67) inaccurately states that, under Local Rule 7.1(c), failure to file a
timely response to a motion for summary judgment "may, in the Court's discretion, be considered an

with the motion and the notice, Haywood failed to respond. Accordingly, the Court adopts Defendants' factual allegations to the extent supported by admissible evidence. Fed. R. Civ. P. 56(e) (providing that if a party fails "to properly address another party's assertion of fact" the court can "consider the fact undisputed for purposes of the motion."); *see also* Local Rule 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed"). The Court still views those facts in the light most favorable to Haywood.

## Analysis

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a

---

admission of the merits of the motion." Defendants likely refer to either a former version of Local Rules or Local Rule 7.1(a)(5), which provides that "failure to file a timely response to a *non-dispositive* motion may be deemed consent to the relief as requested." A motion for summary judgment, however, is a dispositive motion and therefore, Local Rule 7.1(a)(5) is inapposite. Rather, Local Rule 56.1 sets forth the consequences of a plaintiff's failure to timely and properly respond to a motion for summary judgment. Despite this discrepancy, the Rule 56 Notice of Motion adequately advised Haywood of the consequences of his failure to respond to a motion for summary judgment under Fed. R. Civ. P. 56.

reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey*, 544 F.3d at 742.[4] A hearing, however, is not necessary when material facts are not in dispute. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question").

### *Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. 42 U.S.C. § 1997e(a). To comply with the PLRA exhaustion requirement, an inmate must follow the prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citation omitted). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have

---

[4] This case does not implicate *Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025) because Plaintiff has not argued that his attempts to exhaust his administrative remedies were hindered by Defendants' unconstitutional conduct as alleged in the Complaint.

been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the IDOC must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). An inmate who does not know the names of individuals involved in the complaint must include as much descriptive information about the individual as possible. *Id.*

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. § 504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole*, 438 F.3d at 806–07. "The appeal must be received by the [ARB] within 30 days after the date of the decision." *Id.* The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 Ill. Admin. Code § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it

directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, involuntary administration of psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Further, the Seventh Circuit has explained that, to satisfy its purpose and comply with the PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002). A grievance does not comply with the PLRA requirements when it does not raise the same claim as the lawsuit and does not provide sufficient information from which to infer that the defendants are the targets. *Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023). Such a disconnect between a grievance and the complaint deprives the federal courts of jurisdiction to hear the claims. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021); *see also Shipp v. Lobenstein*, No. 23-1923, 2023 WL 8868501, at *2 (7th Cir. Dec. 22, 2023) ("To exhaust remedies, a prisoner must follow the prison's administrative rules, . . . including the level of detail required by them[.]"). Still, failing to name the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Further, the PLRA exhaustion requirement "hinges on the 'availab[ility]' of administrative

remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) (alteration in original)). The administrative process becomes "unavailable," for instance, when prison officials fail to respond to a prisoner's grievance, thus preventing that prisoner from exhausting administrative remedies. *Dole*, 438 F.3d at 809.

## Discussion

At all times relevant to his claims, Haywood has remained incarcerated within the IDOC, which maintains an administrative grievance process of which Haywood is aware and to which he has access. (Doc. 41, ¶ 2). Haywood's grievance records obtained from the Administrative Review Board ("ARB") via subpoena contain 50 pages. (*Id.* at 3; Doc. 41-1). Haywood's grievance records obtained from Menard via subpoena contain 106 pages. (*Id.* at 4; Docs. 41-2 & 42-3). Based on that record, there are only six grievances that are potentially relevant to Plaintiff's claim. The Court discusses each grievance in turn.

### a. Grievance K4-1124-6024 dated November 11, 2024 (Doc. 41, ¶ 5(a); Doc. 41-1, pp. 22–25)

On November 11, 2024, Plaintiff submitted Grievance K4-1124-6024, in which he complained that a bug went into his ear and bit him. (*Id.*). He alleged that although he was sent to healthcare and his ear was flushed, he remained in pain. (*Id.*). He complained generally that nurses, both male and female, gave him various things that did not help with his ailments, and he requested to see a doctor, "be tested for everything," and be transferred to a different prison. (*Id.*). He marked the grievance as emergent. (*Id.*).

On November 19, 2024, the Chief Administrative Officer ("CAO") determined that the grievance was not emergent. (*Id.*). Defendants represent that the Counselor responded to the

grievance on November 22, 2024. (*Id.*). However, review of the cited record shows that the grievance was received by the Counselor on November 22, 2024, but the Counselor did not respond until May 14, 2024, after the filing of the Complaint. (Doc. 41-1, p. 24). The Counselor stated that the response was the same as in Grievance K4-0525-2590, that Haywood had been seen by medical providers since submitting the grievance, and that he would not be transferred due to his maximum security level.[5] (*Id.*). On May 30, 2025, the Grievance Officer ("GO") denied the grievance, citing that Plaintiff had been seen by providers several times since the grievance was submitted. (*Id.*). The ARB received Plaintiff's appeal on June 24, 2025, but as of July 17, 2025, it had not yet been adjudicated.[6] (*Id.*)

Defendants argue that this grievance was not properly exhausted because the ARB had not reviewed its appeal before Haywood filed the Complaint. The Court is not convinced from the record that this is the case. Specifically, there are at least questions of fact as to whether the administrative remedies were rendered unavailable to Haywood due to the five-month delay at the first level of review by the Counselor. Still, the Court does not have to address this issue because it finds the grievance to be substantively deficient to exhaust any claim Haywood raised in this action.

First, Grievance K4-1124-6024 predates the allegations that gave rise to Count 4 of the Complaint. Therefore, it cannot have exhausted that claim. The grievance further does not contain adequate details to exhaust Counts 1 and 2. In Count 1, Haywood complained about the unsanitary

---

[5] Defendants did not discuss Grievance K4-0525-2590 in their motion. In any case, that grievance could not have exhausted the administrative remedies because Haywood filed it on April 27, 2025, the day before the filing of the Complaint. (Doc. 41-2, p. 43).
[6] July 17, 2025, is the date that defense counsel received the ARB grievance materials. (Doc. 41, ¶ 5(b)).

conditions on crisis watch since his move there on October 26, 2024. He alleged that the cell was

"flooded with feces on the floor, on the wall, [and] the toilet…and it didn't flush," and that it took

33 days from when Haywood moved into the cell until it was cleaned. (*Id*.). In the grievance,

Haywood complained about being bitten by a bug that entered his ear. He complained about the

lack of medical treatment for his injury and asked to be moved to a different facility. These are

materially distinct allegations and claims. Likewise, in Count 2, Haywood raises a claim of

deliberate indifference due to Nickolson's and Salger's failure to provide Haywood with mental

health services during and after spending time in unsanitary conditions. This is again a distinct

claim from the claim for deliberate indifference to Haywood's serious medical need resulting from

the bug bite in his ear.

Therefore, Grievance K4-1124-6024 did not exhaust the administrative remedies on any of

the claims that Haywood raised in this action.

**b. Grievance K4-1224-6629 dated December 14, 2024 (Doc. 41, ¶ 5(b); Doc. 41-1, pp. 39–46)**

On December 14, 2024, Haywood submitted a grievance stating that while he was on

suicide watch on November 19, 2024, the cell did not have working water and there was "doo-doo

everywhere." (*Id.*). He stated that no one cleaned his cell, although he had been "asking the[m] for

two weeks," so he had to "throw the doo-doo water out the cell," which allegedly resulted in

several officers entering his cell and "punched, kicked and stomped (on)" him. (*Id.*). He stated that

he "tried to get mental health to call IA so I can file a PARA on staff," but that "she didn't listen."

(*Id.*). Plaintiff wrote that he suffered injuries and needed to be transferred to another prison. (*Id.*).

He marked the grievance as emergent. (*Id.*).

On December 17, 2024, the CAO determined that the grievance was not emergent. (*Id.*).

On March 5, 2025, the GO determined that the grievance was resolved, to which the CAO concurred.[7] (*Id.*). On March 13, 2025, Haywood appealed the grievance to the IDOC Director, and the ARB received the grievance on March 18, 2025. (*Id.*).[8] On June 23, 2025, the ARB found the grievance resolved in part and denied in part on its merits. (*Id.*).

While this grievance is relevant to Count 1 of the Complaint for unsanitary conditions of confinement, Haywood failed to fully exhaust it before initiating this action. Further, any delay at the second level of review did not render the administrative process unavailable because Plaintiff had received the GO's response and already submitted his appeal to the ARB by the time he filed the Complaint. The Complaint was filed approximately a month after the ARB received Haywood's appeal. Under the Illinois Administrative Code, ARB has six months from receipt of an appeal to adjudicate it. Because Grievance K4-1224-6629 had not been fully exhausted by the time the Complaint was filed, it did not satisfy the PLRA requirement.

c. **Grievance K4-0125-0240 dated January 15, 2025 (Doc. 41, ¶ 5(c); Doc. 41-1, pp. 18–21)**

On January 15, 2025, Plaintiff submitted a grievance complaining that certain officers were "retaliating [against] him after the ticket he got on 11-19-2024." (*Id.*). He also complained that he had been ignored by "staff, C/Os and nurses," even though he had been submitting sick call slips requesting to be seen for "throwing up blood." (*Id.*). He requested an emergency transfer to another prison and to the ER. (*Id.*). He marked the grievance as emergent. (*Id.*). On January 21, 2025, the

---

[7] Defendants misstate that the GO provided a response on December 19, 2024. Review of the cited record shows that the GO received Grievance K4-1224-6629 on that date but did not respond to it until March 5, 2025. (Doc. 41-1, p. 40).

[8] Although the motion states that the ARB issued a decision on the grievance on March 18, 2025, review of the records shows that that was the date that the grievance was received by the ARB. The ARB issued its decision on July 23, 2025. (Doc. 41-1, p. 39).

CAO determined that the grievance was not emergent. The Counselor received the response on January 28, 2025, but did not respond until May 22, 2025, 25 days after the filing of the Complaint.[9] (Doc. 41-1, p. 20). On May 30, 2025, the GO recommended that the grievance be denied, *inter alia*, because Haywood failed to comply with AD 04.01.114 by omitting a copy of the Counselor's response. (*Id.*). The CAO concurred on the same date. (*Id.*). The ARB received Haywood's appeal on June 24, 2025, but as of July 17, 2025, had not issued a decision. (Doc. 40, p. 5).

As with Grievance K4-1124-6024, the Court questions whether the administrative process was available to Haywood with respect to this grievance: the Counselor ignored the grievance for over four months and only provided a response 25 days after the filing of the Complaint. The Court notes that Defendants have failed to include the Counselor's response to the cited material. Accordingly, they have failed to satisfy their burden to show that the administrative remedies were available to Haywood despite the four-month delay in the Counselor's response.

Still, the Court finds that the grievance was substantively insufficient to alert the institution of Haywood's claims against Nickolson and Salger. In the grievance, Plaintiff complained about staff misconduct and lack of medical treatment. Specifically, he grieved that certain officers were "retaliating [against] him after the ticket he got on 11-19-2024." (Doc. 41-1, p. 20). He stated that staff and correctional officers do not let him get a shower for over 90 days because he is "on some list" with inmates who cannot get a shower. (*Id.* at 21). He further complained that staff and correctional officers took his "Christmas bag" for retaliation. He further grieved that he was trying

---

[9] Again, the motion misstates the date the Counselor provided a response. It further conflates the date that the grievance was received by the GO with the date of the GO's response. The dates set forth in this Order are based on the cited record. Further, the Counselor's response is not included in the record cited by Defendants.

to get the right medication for his mental health problems, but Lt. Pie refused his request until he was out of crisis watch. (*Id.*). He further stated that he was denied his personal property and a bedroll for three months despite asking every staff member on all three shifts, and that he was left with nothing in a very cold cell just because he was "on watch." He also complained that he had been ignored by "staff, C/Os and nurses," even though he had been submitting sick call slips requesting to be seen for "throwing up blood." (*Id.*). He told staff/ correctional officers and nurses that the veins inside his body were burning, but they ignored his sick call and health care slips. He further grieved that he was not allowed to "use the bathroom." He requested an emergency transfer to another prison and to the ER. (*Id.*).

While the grievance contains some information relevant to Haywood's deliberate indifference claim for the denial of medical attention after allegedly being attacked on November 19, 2024 (to Count 4), it did not identify any of the Defendants by name. Further, it did not provide adequate details to discern that Nickolson and Salger were the targets of the grievance. He only referenced "nurses" in general, which is insufficient to alert the institution to Haywood's claims against Nickolson, a QMHP, or Salger, a BHT, and to provide an opportunity to resolve the issue internally. Accordingly, Grievance K4-0125-0240 is substantively insufficient to exhaust Haywood's claims in this action.

   d. **Grievance K4-0125-0287 dated January 18, 2025 (Doc. 41, ¶ 5(d); Doc. 41-1, pp. 14–17)**

On January 18, 2025, Haywood submitted a grievance that was substantially duplicative of Grievance K4-0125-0240 dated January 15, 2025. Haywood complained that his medical issues and sick call slips had been ignored. (*Id.*). He marked the grievance as emergent. (*Id.*). On January 22, 2025, the CAO determined that the grievance was not emergent. (*Id.*). The Counselor received

the grievance on January 28, 2025, but did not respond until May 22, 2025, after the filing of the

Complaint. (Doc. 41-1, pp. 14–17). On June 2, 2025, the GO found that the grievance was

essentially the same as Grievance K4-1224-6629 and denied it because the staff conduct claim was

under investigation. (*Id.*). On June 11, 2025, the CAO concurred. (Id.). The ARB received

Plaintiff's appeal on June 24, 2025, after Haywood filed this Complaint, and as of July 17, 2025,

it had not issued a decision on it. (*Id.*).

While the fourth-month delay in the Counselor's response raises concerns as to the

availability of the administrative process, the Court finds that Grievance K4-0125-0287 could not

have exhausted Haywood's administrative remedies because it did not contain sufficient

information as to the claims raised in this action. Haywood complained again that he had been

"writing sick call slips, health care slips, and request slips, letting them know" that his veins inside

his body burned. (Doc. 41-1, pp. 16-17). He further noted that he had "been telling them" that he

had pain in his lower back, lower right side, and the lower front of his stomach, but was not allowed

to see a nurse or a doctor. (*Id.*). He stated that he had been submitting sick call slips for five weeks,

"telling them" that he was "throwing up blood." He expressed his concerns that staff and

correctional officers were still retaliating against him after the November 19, 2024, incident. He

repeated his complaint that he was not allowed to take a shower. He stated that he notified several

nonparties, including "healthcare, sick call, Dr. Crampin, the Counselor, Sgt. Jones, Lt. Pies, and

the Warden," about his health issues, but no one responded. (*Id.*). He noted his concern that staff

and correctional officers were throwing sick call slips away. He requested again an emergency

transfer to another prison and to the ER. (*Id.*). He repeated that he had been denied his personal

property since November 19, 2024. He stated that he "wrote property to let them know" that he

was anemic and that he was cold at night, but did not receive a response or a bedroll. (*Id.*).

This grievance is substantially duplicative of Grievance K4-0125-0240. None of those grievances identifies Defendants by name or even provides any descriptive information to alert the institution that they were the targets of Haywood's claims. Accordingly, as with Grievance K4-0125-0240, Grievance K4-0125-0287 is substantively deficient and did not exhaust Haywood's administrative remedies as to the claims asserted in this action.

**e. Grievance K4-0125-0416 dated January 25, 2025 (Doc. 41, ¶ 5(e); Doc. 41-1, pp. 47–50)**

On January 25, 2025, Plaintiff submitted a grievance claiming that he was not receiving therapy sessions and that he had been trying to "tell mental health staff that he really needs therapy sessions because it really helps him." (*Id.*). He also complained that even though he told "mental health staff" that he was not suicidal or homicidal, they kept him on watch. (*Id.*). He requested to receive mental health sessions and to be transferred to another prison. (*Id.*). He marked the grievance as emergent. (*Id.*). On January 27, 2025, the CAO expedited the grievance as emergent. (*Id.*). On January 29, 2025, the GO denied the grievance, finding that Plaintiff was seen every day on crisis watch from November 18, 2024, through December 4, 2024, from December 17–18, 2024, and from December 21, 2024, through January 13, 2025. (*Id.*). The CAO concurred on the same date. (*Id.*). The ARB received Plaintiff's appeal on February 24, 2025, and denied it on March 21, 2025, on its merits. (*Id.*).

Defendants do not dispute that Haywood fully exhausted this grievance prior to filing the Complaint. They argue, however, that the grievance is substantively deficient to serve its purpose. The Court agrees with respect to Counts 1 and 4, but disagrees with respect to Count 2. Grievance K4-0125-0416 does not contain any allegations relevant to Counts 1 and 4. However, it contains

sufficient information to alert the institution of Haywood's claims in Count 2, namely the denial of treatment of his mental health issues while on crisis watch. Although Haywood did not identify Nickolson or Salger by name, he stated multiple times that he advised "mental health staff[s]" of his need for therapy sessions and proper medication, but they did not respond to his requests. The GO's response indicates that the Menard Mental Health Department was contacted, and that it was confirmed that Haywood was seen every day on crisis watch by a 'Psych' and a 'BHT.' Nickolson is a Qualified Mental Health Professional (QMHP), and Salger is a Behavioral Health Technician (BHT). Based on that information, the grievance was denied on its merits. Accordingly, the Court finds that the grievance contained adequate descriptive information, based on the titles of the individuals involved and the timeframe of Haywood's stay at crisis watch, to alert the institution of its targets and allow an opportunity to resolve the issue internally.

Accordingly, the Court finds that Haywood satisfied the PLRA exhaustion requirement as to Count 2 of the Complaint by fully exhausting Grievance K4-0125-0416.

### f. Grievance K4-0225-0608 dated February 1, 2025 (Doc. 41, ¶ 5(f); Doc. 41-1, pp. 35–38)

Finally, on February 1, 2025, Haywood submitted a grievance claiming that a "white worker" tampered with his food tray and personal property and "poisoned" him. (*Id.*). He further alleged that the water in his cell had "black oil in it." (*Id.*). He claimed that he had been "treated really unfair[ly] since he got tickets on 11-19-24." (*Id.*). He also claimed that his medical issues had been ignored, including that the "veins inside his body been burning on & off," even though he "wrote to sick call, health care, Dr. Crampin, Lt, Ser, Major & the Warden." (*Id.*). He marked the grievance as emergent. (*Id.*). He requested to be transferred out of Menard immediately. (*Id.*). On February 5, 2025, the CAO determined that the grievance was not emergent. (*Id.*). On February

10, 2025, the Counselor denied the grievance on its merits. (*Id.*). On March 18, 2025, the GO denied the grievance, noting that, pursuant to Administrative Directive 04.01.114, the grievance, along with the Counselor's response, should have been forwarded to the Grievance Office within 14 days of the Counselor's response, and that this grievance was therefore untimely. The CAO concurred. (*Id.*). The ARB received Plaintiff's appeal on March 28, 2025, but at the time Plaintiff filed his Complaint, the ARB had not yet adjudicated this grievance. (*Id.*).

As with Grievance K4-1224-6629, Haywood failed to fully exhaust Grievance K4-0225-0608 before initiating this action. Specifically, he filed his grievance on February 1, 2025, and appealed it to the ARB on March 28, 2025. There is no delay in the responses provided by the Counselor or the GO or any other indication that the administrative process was unavailable as to that specific grievance. He filed the Complaint on April 27, 2025, less than a month before appealing the grievance to the ARB. Because the ARB had not yet issued a response by that time, Grievance K4-1224-6629 did not satisfy the PLRA requirement.

Based on the foregoing, Defendants' Motion for Summary Judgment on the  Issue of Exhaustion (Doc. 40) is **GRANTED in part and DENIED in part**. Count 2 against Defendants Nickolson and Salger survives summary judgment. Counts 1 and 4 are **DISMISSED without prejudice**. However, Haywood's failure to respond to the motion for summary judgment despite being advised of the consequences of his failure to do so raises concerns as to his interest in prosecuting this case. Accordingly, the Court will enter a separate order directing Plaintiff to show cause why this case should not be dismissed with prejudice for his failure to prosecute it.

## Conclusion

For these reasons, Defendants' Motion for Summary Judgment on the  Issue of Exhaustion (Doc. 40) is **GRANTED in part and DENIED in part**. Counts 1 and 4 are **DISMISSED without prejudice**. Count 2 survives summary judgment on the issue of exhaustion of administrative remedies. However, the Court will enter a separate order directing Haywood to explain in writing why this case should not be dismissed with prejudice due to his failure to prosecute it.

**IT IS SO ORDERED.**

**DATED: August 7, 2026**

_____
**Hon. Reona J. Daly**
**United States Magistrate Judge**